# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **VERONICA G. COLEMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  2:14-CV-1897-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Veronica G. Coleman ("Ms. Coleman") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Coleman timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Coleman was 50 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (Tr. 45). She has completed the twelfth grade.

(Tr. 45). Her past work experience includes employment as a nurse assistant. (Tr. 70). She claims she became disabled on April 16, 2010 due to status post rotator cuff repair of the left shoulder, rotator cuff tear of the right shoulder, degenerative disc disease of the cervical spine, type II diabetes mellitus, and arterial hypertension. (Tr. 23). Her last period of work ended on April 15, 2010. (Tr. 195).

On July 10, 2011, Ms. Coleman protectively filed a Title II application for a period of disability and DIB. (Tr. 20). On September 13, 2011, the Commissioner initially denied these claims. *Id.* Ms. Coleman timely filed a written request for a hearing on September 21, 2011. *Id.* The ALJ conducted a hearing on the matter on January 23, 2013. *Id.* On April 24, 2013, he issued his opinion concluding Ms. Coleman was not disabled and denying her benefits. (Tr. 17). She timely petitioned the Appeals Council to review the decision on May 14, 2013. (Tr. 14-16). On August 5, 2014, the Appeals Council issued a denial of review on her claim. (Tr. 1-5).

Ms. Coleman filed a Complaint with this court on October 6, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on January 14, 2015. (Doc. 8). Ms. Coleman filed a supporting brief (Doc. 10) on February 27, 2015, and the Commissioner responded with her own (Doc. 11) on March 12, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 26, 2014.

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.     Ms. Coleman met the insured status requirements of the Social Security Act through December 31, 2015.

2.     She had not engaged in substantial gainful activity since April 16, 2010, the alleged disability onset date.

5

3.      She had the following severe impairments: status post rotator cuff repair of the left shoulder, rotator cuff tear of the right shoulder, degenerative disc disease of the cervical spine, type II diabetes mellitus, and arterial hypertension.

4.      She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.      She had the residual functioning capacity ("RFC") to perform light work which allows her to occasionally perform pushing and pulling movements with arm and/or leg controls. She could occasionally climb, balance, bend and stoop. She could frequently perform gross and fine manipulation. She should never reach with the left upper extremity. She could operate motor vehicles and work around dust, allergens, and fumes.

6.      She was unable to perform any past relevant work.

7.      She was 50 years old, which is defined as closely approaching advanced age.

8.      She has at least a high school education and was able to communicate in English.

9.      Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.    Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.    Ms. Coleman had not been under a disability, as defined in the Social Security Act, from April 16, 2010, through the date of this decision.

(Tr. 23-35).

## ANALYSIS

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Coleman objects to the ALJ's conclusion that she retains the residual functional capacity ("RFC") to perform work-related activities at the light level of exertion. She urges this court to reverse the Commissioner's decision to deny her benefits on the grounds that the ALJ's decision is not supported by substantial evidence because he did not properly evaluate the medical source opinions of Dr. Jeffrey Davis and Dr. Richard Rex Harris. (Doc. 10 at 8, 10). In the alternative, she requests that "her case be remanded for a full and proper consideration of the medical

---

[2]*Strickland* is binding precedent in this Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

evidence of record, including the opinions of [her] treating physician, Dr. Davis, and the consultative physician, Dr. Harris." (Doc. 10 at 15).

Ms. Coleman argues that the evidence of record supports a more limited RFC based upon the severity of her pain and other subjective limitations, and that she would have been found disabled had the ALJ evaluated the examining physicians' opinions correctly. *Id.* at 9, 11. She also asserts that the ALJ had a duty to recontact the examining physicians. (Doc. 10 at 15). In its review, this court finds that the ALJ applied the correct legal standard and afforded the appropriate weight to the medical source opinions of Ms. Coleman's examining physicians. Substantial evidence supports the ALJ's conclusion that Ms. Coleman has a RFC to perform light work activity, and that she is not disabled given this RFC finding.

I.   **THE ALJ APPROPRIATELY EVALUATED AND ASSIGNED WEIGHT TO DR. DAVIS'S OPINION, AND HIS DISABILITY DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Ms. Coleman contends that the ALJ's decision is not based on substantial evidence because he failed to accord adequate weight to the opinion of treating physician, Dr. Jeffrey Davis. (Doc. 10 at 10). Ms. Coleman's argument triggers the treating physician's rule, requiring the opinions of Dr. Davis to "be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003). Against this backdrop, the court sees

no reversible error committed by the ALJ and finds the ALJ's RFC finding is consistent with the work-related limitations that Dr. Davis imposed taken as a whole.

Dr. Davis treated Ms. Coleman for a period between October 2010 and December 2011, during which he would assess Ms. Coleman's complaints, conduct physical examinations, and make recommendations about her functional capacity based upon his observations and objective medical evidence. On January 25, 2011, Dr. Davis placed Ms. Coleman at maximum medical improvement ("MMI") with a permanent partial impairment of "12% of the upper extremity, [and] 7% of the whole person." (Tr. 282). He then released Ms. Coleman to work "as per functional capacity evaluation done," referring to the limitations of her December 2010 functional capacity evaluation ("FCE").[3] *Id*. On October 10, 2011, Dr. Davis performed a physical capacity evaluation ("PCE") of Ms. Coleman and a clinical assessment of her pain ("CAP").[4] In December of 2011, Dr. Davis recommended "no change in date

---

[3]In December 2010, Ms. Coleman demonstrated she could perform activities at the "medium work classification level." (Tr. 294). Her FCE placed the following work restrictions on her: constantly grip/grasp and reach at the waist level; frequently stand, walk, lift 8 lbs. from floor to waist, lift 13 lbs. from waist to overhead, and carry 15 lbs.; and occasionally reach overhead, stoop and reach low, climb a ladder, crawl, push with 45 lbs. of force, pull with 35 lbs. of force, lift from floor to waist 15 lbs. unilaterally to the left and 20 lbs. unilaterally to the right, lift 20 lbs. from waist to overhead, lift from waist to head 10 lbs. unilaterally to the left and 15 lbs. unilaterally to the right, and carry 35 lbs. (Tr. at 297). The FCE noted that her performance of these tasks were "[l]imited by complaints of right hip pain." *Id*.

[4]In the PCE, Dr. Davis found that Ms. Coleman could lift or carry 20 lbs. occasionally and 10 lbs. frequently, and that in an eight hour workday she could sit for eight hours and stand or walk for five hours. (Tr. 348). Dr. Davis noted Ms. Coleman did not need a device to ambulate. *Id*. Dr. Davis opined Ms. Coleman must never reach with her left upper extremity, but she could

of [her] maximum medical improvement or permanent partial impairment," and he recommended "no change in her permanent restrictions as per [her] FCE." (Tr. 377).

Almost a year passed before Ms. Coleman returned to Dr. Davis's office on November 27, 2012. (Tr. 455-57). During that visit, he noted she experienced "left shoulder pain" and "cervical pain referred to [her] left shoulder." (Tr.455). He recommended "no change in date of [Ms. Coleman's] maximum medical improvement and permanent partial impairment." *Id*. Dr. Davis also recommended "no change in her work restrictions for her functional capacity evaluation," which was last assessed in October 2012 and reflected the ability to perform work at the light activity level.[5] *Id*.

The ALJ assigned "great weight" to Dr. Davis's opinion concerning Ms. Coleman's physical capacity, "given the nature and extent of his treating

---

occasionally pull or push using arm and leg controls, climb and balance, bend and stoop, and frequently perform gross and fine manipulation with her hands. *Id*. In his assessment of Ms. Coleman's pain, Dr. Davis noted that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," and that physical activities "[g]reatly increased pain, and to such a degree as to cause distraction from tasks or total abandonment of tasks."(Tr. 349). However, he noted that her pain medication had only some side effects, "but not to such a degree as to create serious problems in most instances." (Tr. 350).

[5]Her latest FCE was conducted in October 2012, and reported her "current work capacity" as "light based on FCE Performance." (Tr. 481). The FCE placed the following work restrictions on Ms. Coleman: occasionally lift 20 lbs. from floor to waist, lift 15 lbs. from waist to overhead, carry 25 lbs., push with 25 lbs. of force, pull with 35 lbs. of force, and reach overhead. (Tr. 482). Her unrestricted activities were reaching horizontal at desk level, reaching low below the waist, standing, walking, stair climbing, sitting, kneeling, crouching, and stooping. *Id*. She was reported as having "no apparent impairments in hand dexterity and hand coordination." *Id*.

relationship." (Tr. 32). The ALJ reasoned that Dr. Davis's "opinions are well

supported by, and not inconsistent with, the evidence of record as a whole." *Id*.

However, the ALJ had "not given any weight" to Dr. Davis's assessment of Ms.

Coleman's pain because he determined Dr. Davis's "opinions are based on a very

intermittent treatment history, not a longitudinal history of ongoing pain problems

sufficient to establish a disabling medical condition." *Id*. Ms. Coleman argues that the

ALJ did not adequately weigh Dr. Davis's medical opinions because his treatment of

Dr. Davis's assessment of her physical capacity was inconsistent with his treatment

of Dr. Davis's assessment of her pain.[6] (Doc. 10 at 9). Ms. Coleman argues that, "if

given proper weight, the ALJ should have found [her] disabled based upon the

severity of pain indicated by Dr. Davis." *Id*.

The court finds that any alleged error in the ALJ's assignment of weight to Dr.

Davis's individual assessments constitutes harmless error, because it is evident from

the ALJ's decision that he adopted Dr. Davis's opinion of Ms. Coleman's functional

capacity in determining her RFC.[7] Further, Dr. Davis did not somehow limit the scope

---

[6]Ms. Coleman notes, "in reference to one single exhibit, the ALJ concludes that it is to be given great weight due to Dr. Davis'[s] long treatment relationship with Plaintiff, but then determines in the same paragraph that the opinion is not to be given any weight due to the relationship not being long enough." (Doc. 10 at 9). She argues that "[t]his inconsistency in the ALJ's decision would demand remand so that the ALJ can properly clarify this statement." *Id*.

[7]In a non-binding opinion, the Eleventh Circuit found that the ALJ's failure to discuss the weight given to a physician's findings was harmless error because the physician's findings did not contradict the ALJ's opinions. *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008)

of his light duty opinions by indicating that he did consider Ms. Coleman's subjective pain when returning her to light work duty.

The ALJ's lack of clarity in his allocation of weight to Dr. Davis's opinions is cured by his analysis in determining the extent of Ms. Coleman's limitations, which was appropriately consistent with Dr. Davis's opinions. Dr. Davis recommended that Ms. Coleman return to work according to the limitations of her FCE, restricting her to light work activity.[8] Likewise, the ALJ determined that Ms. Coleman could perform light work activity with the restrictions he enumerated in his findings.[9] (Tr. 29). In coming to the same conclusions as Dr. Davis, the ALJ acknowledged the same medical evidence Dr. Davis considered in making his recommendations. The ALJ

---

("Moreover, Dr. Warren's opinions do not otherwise contradict the ALJ's findings. Accordingly, the ALJ's failure to state what weight she gave to the opinions was harmless error."). *Cf. East v. Barnhart*, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) ("East also argues that the ALJ erred in failing to consider the consulting psychologist's report by Dr. Priscilla Wilson, Ph.D. However, any error in failing to address this report explicitly in the ALJ's determination was harmless given that Dr. Wilson's observations in the report were consistent with the ALJ's determination.").

[8]On November 27, 2012, Dr. Davis recommended "no change in [Ms. Coleman's] work restrictions for her functional capacity evaluation." (Tr. 456). Ms. Coleman's most recent FCE was performed in October 2012, which reported her "current work capacity" as "light based on FCE Performances." (Tr. at 481).

[9]The ALJ found Ms. Coleman could occasionally push/pull with arm/leg controls; occasionally climb, balance, bend, and stoop; frequently perform gross and fine manipulation; and never reach with left upper extremity. The ALJ also found that she could operate motor vehicles and work around dust, allergens and fumes. (Tr. 29). These findings are consistent with Dr. Davis's PCE (Tr. 348), and are consistent with or more restrictive than the FCEs Ms. Coleman participated in and Dr. Davis refers to in making his recommendations regarding Ms. Coleman's functional capacity. (Tr. 287, 294, 481).

noted that the "[f]unctional capacity evaluations performed in the years 2010[10] and 2012 illustrated [Ms. Coleman] had a capacity to perform light work activity." (Tr. at 31). The ALJ also referred to the PCE by Dr. Davis, noting that, "[a] physical capacity evaluation completed by Dr. Jeffrey Davis in October 2011 reflected [Ms. Coleman] could perform a restricted range of light work activity." *Id*. Furthermore, the ALJ recognized that "[i]n the years 2011 and 2012, Dr. Davis made no changes to [Ms. Coleman's] MMI, impairment ratings or work restrictions." *Id*. The ALJ clearly considered Dr. Davis's reports in making his RFC determination, and made findings that are consistent with this evidence and the record taken as a whole.

Additionally, Ms. Coleman's allegations of pain have been accounted for through the ALJ's effective adoption of the opinions of Dr. Davis. Dr. Davis's reports note Ms. Coleman's complaints of pain, which demonstrate his consideration of her pain when making his recommendations. For example, Dr. Davis reviewed Ms. Coleman's December 2010 FCE in January of 2011 and noted in his report that "[t[he patient had some right hip and lower back pain during the testing."[11] (Tr. 282). In

---

[10]The ALJ is referring to Ms. Coleman's earliest FCE performed in August 2010. (Tr. 287-291). The FCE reported, "[t]he minimal physical demands Ms. Coleman demonstrates is LIGHT to low medium," but limited her "[o]verhead lifting and reaching," as well as "kneeling, squatting, stair climbing, ladder climbing, crawling and bending,"  to an "occasional basis." (Tr. 287).

[11]The December FCE demonstrated Ms. Coleman had the ability to perform work at the medium work activity level. (Tr. 287). Dr. Davis's recommendation that Ms. Coleman could work as per that FCE was less restrictive than his ultimate opinion in 2012, which recommended Ms.

determining Ms. Coleman could be released to work as per her FCE, Dr. Davis acknowledged and accounted for Ms. Coleman's pain when participating in the examination. Similarly, in November 2012, Dr. Davis recorded that, "[Ms. Coleman] states she still has ongoing shoulder pain," that, "[s]he has a lot of tenderness," and that, "[her shoulder] hurts with use," and yet made no changes to his opinion of Ms. Coleman's functional abilities. (Tr. 455).

Furthermore, Dr. Davis's FCEs factored in when Ms. Coleman limited herself in performing physical tasks and when she experienced pain performing these tasks.[12] Even though the ALJ did not give any weight to the CAP Dr. Davis conducted, it is clear from the record that Dr. Davis took this pain assessment into account when he made his own recommendations regarding Ms. Coleman's functional capacity. This court finds it significant that Dr. Davis recommended no changes from Ms. Coleman's work restrictions that the FCE imposed, to her work restrictions in his

---

Coleman could work at the light work activity level as per her most recent FCE from October 2012. (Tr. 481). Nonetheless, Dr. Davis took into account Ms. Coleman's pain at the relevant time when issuing this opinion in January of 2011.

[12]The August 2010 FCE report indicated Ms. Coleman "[complains of] left shoulder pain" when she tried to lift overhead with her right arm, and that she "[complains of] pain at 6/10 left shoulder" when she performs elevated work. (Tr. at 288). The December 2010 FCE report notes that, "right hip pain was the biggest limiting factor during this Functional Capacity Evaluation," (Tr. 294), and indicates with an asterisk on a "Daily Tolerance Grid" which tasks were "[l]imited by complaints of right hip pain," and which were "[l]imited by low back pressure and pain." (Tr. 297). The October 2012 FCE report noted that, "[p]atient manages pain with rest and avoidance of any heavy lifting," and that "[c]lient gave good effort throughout FCE and worked through pain in all activities." (Tr. 481).

14

December 2011 report (Tr. 377), and his November 2012 report (Tr. 455-56). Notably, these evaluations occurred after Dr. Davis conducted the PCE and CAP.

Thus, notwithstanding the confusing language used by the ALJ about Dr. Davis's pain assessment, the ALJ properly considered Dr. Davis's medical evaluations in determining Ms. Coleman's RFC, and he applied the appropriate level of deference to these opinions. Further, in relying upon Dr. Davis's opinions, Dr. Davis's assessment of Ms. Coleman's pain was considered and credited indirectly in the ALJ's determination of her RFC. Any alleged error of the ALJ was harmless. Accordingly, consistent with the foregoing analysis, the ALJ appropriately evaluated and relied upon Dr. Davis's opinions about Ms. Coleman's functional capacity, and his disability decision is supported by substantial evidence.

## II.   THE ALJ APPROPRIATELY EVALUATED AND ASSIGNED WEIGHT TO DR. HARRIS'S OPINION, AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Ms. Coleman also contends that the ALJ's decision is not based on substantial evidence because he failed to "properly evaluate and state the weight given to Dr. Harris'[s] significant opinion." (Doc. 10 at 12). She argues that, "[t]he ALJ's failure to provide proper analysis of how he reached his conclusion as to Dr. Harris'[s] opinion is cause for a reversal of the decision." *Id*.

Upon his examination of Ms. Coleman, Dr. Richard Rex Harris concluded that she had the ability to perform light to sedentary work activity. (Tr. 81) ("It is my medical opinion that this claimant is capable of light to sedentary work in the work place."). Although Dr. Harris's opinion partially supports the ALJ's RFC finding,[13] the ALJ discounts the more restrictive end of the range of work activity that Dr. Harris finds Ms. Coleman can perform.

The Eleventh Circuit has held that the ALJ may properly discount a physician's opinion when the evidence supports a conclusion which differs from that physician's opinion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("[T]he Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion."). However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citing *MacGregor v. Bowen*, 976 F.2d 1050, 1053 (11th Cir. 1986)).

In his decision, the ALJ did not afford "controlling weight" to the medical source opinion of Dr. Harris. (Tr. 33). He determined that Dr. Harris's opinions "appear to be inconsistent with his own clinical findings of record and largely based

---

[13]The ALJ's finding that Ms. Coleman can perform light work activity is partially supported by the less restrictive end of the range of work activity Dr. Harris opined Ms. Coleman can perform.

upon [Ms. Coleman's] subjective allegations, which are not credible." *Id*. This court finds that the ALJ's assignment of the weight attributed to Dr. Harris's medical opinion is adequate, and that his conclusion to not give Dr. Harris's opinion controlling weight was supported by substantial evidence.

The record supports the ALJ's reasoning that Dr. Harris's medical source opinion contained inconsistencies with his own clinical evidence. Dr. Harris opined that Ms. Coleman could only occasionally reach, handle, finger, feel, and push and pull. (Tr. 34). However, he notes in his report that she has full range of motion of her neck, shoulders, arms, wrists and fingers, and that she can open and close doors, and button and unbutton her clothing.[14] Dr. Harris indicated that Ms. Coleman could only walk for an hour out of the day and ten minutes at a time, and stand for only two hours out of the day and ten minutes at a time. (Tr. 83).  However, his findings state that she has "full range of motion of the hips, knees and ankles," and that her "[g]ait is normal." (Tr. 80). Although Ms. Coleman experiences "diffuse tenderness throughout the [left] shoulder," Dr. Harris noted that, "[t]here is very mild atrophy of the left posterior shoulder girdle and of the shoulder." *Id*. Dr. Harris indicated that Ms. Coleman could "keep up [the] house," (Tr. 83), which certainly would involve

---

[14]"There is full range of motion of the neck. There is full range of motion of the right shoulder, elbow, wrist and fingers…. There is full range of motion of the left shoulder. There is full range of motion of the left wrist. The claimant can make a fist with both hands…. She can open and close doors. She can button and unbutton clothes." (Tr. 80).

slightly demanding physical activity, but concluded that she could only perform light to sedentary work. Thus, the ALJ's conclusion that Dr. Harris's opinion contains inconsistencies with his clinical findings is supported by substantial evidence, and the ALJ may properly discount that part of Dr. Harris's medical source opinion that Ms. Coleman should be restricted to sedentary work.

Furthermore, Social Security regulations specifically direct the ALJ to consider the extent to which a medical opinion is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ's conclusion that Ms. Coleman had the RFC to perform light work activity was supported by the opinion of Ms. Coleman's treating physician, Dr. Davis. As discussed previously, Dr. Davis's opinion is consistent with the objective medical evidence provided by the FCEs Ms. Coleman participated in as well as diagnostic medical imaging.

On the other hand, Dr. Harris came to the conclusion that Ms. Coleman had a more restrictive ability to perform work-related activity based upon his single examination of her on August 24, 2012.[15] As a consulting physician who only

_____

[15]In particular, Dr. Harris found that Ms. Coleman could only sit for 3 hours, stand for 2 hours, and walk for 1 hour in an 8 hour work day. (Tr. 83). This is inconsistent with Ms. Coleman's most recent FCE which notes that Ms. Coleman's ability to walk, stand or sit is unrestricted (Tr. 482), and Dr. Davis's physical capacity examination in which he determined Ms. Coleman could sit

examined Ms. Coleman on one occasion, Dr. Harris's opinion is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)) ("[Drs. Davis's and Simpson's] opinions are not entitled to deference because as one-time examiners they were not treating physicians."). By contrast, Dr. Davis saw Ms. Coleman on a regular basis beginning in October 2010 through December 2011. (Tr. 381). The ALJ appropriately assigned more weight to the opinion of Dr. Davis, Ms. Coleman's treating physician, than he did to Dr. Harris's opinion. The opinion of a claimant's treating source is generally entitled to special weight because such a source is "able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Dr. Davis's on-going treatment of Ms. Coleman provides him with more insight into the particulars of her pain allegations and capacity to perform work-related activities. Accordingly, it was entirely appropriate for the ALJ to reject that part of Dr. Harris's opinion that was inconsistent with the opinion of Ms. Coleman's treating physician, Dr. Davis.

---

for 8 hours and walk and stand for 5 hours combined in an 8 hour work day. (Tr. 348). In addition, Dr. Harris found that Ms. Coleman could only occasionally lift and carry up to 10 lbs. but never more (Tr. 82), which contradicts Dr. Davis's opinion that she could lift and carry up to 20 lbs. occasionally and 10 lbs. frequently (Tr. 348), and her latest FCE which reported she could occasionally lift and carry between 15 lbs. and 20 lbs. (Tr. 482). Dr. Harris also found that Ms. Coleman could never balance, stoop, kneel, or crouch (Tr. 85), but her latest FCE reported Ms. Coleman was unrestricted in stooping, kneeling, and crouching (Tr. 482), and Dr. Davis opined that she could occasionally balance and stoop. (Tr. 348).

Thus, the ALJ afforded proper weight and provided adequate analysis of consulting physician Dr. Harris's medical opinion, and his conclusions regarding Dr. Harris's opinion are supported by substantial evidence. Therefore, a reversal of the ALJ's decision as requested by Ms. Coleman is not in order and remand for further consideration of Dr. Harris's medical opinion is unnecessary.

### III.   THE ALJ DID NOT HAVE A DUTY TO RECONTACT DR. DAVIS OR DR. HARRIS BECAUSE THE RECORD WAS FULLY DEVELOPED.[16]

Ms. Coleman also requests that her case be remanded for further development of the record and consideration because, she contends, the ALJ had a duty to recontact Dr. Davis and Dr. Harris to clarify their medical source opinions. Ms. Coleman argues that the ALJ was required under SSR 96–5p[17] to recontact Dr. Davis if he found Dr. Davis's opinions to be inconsistent.[18] Without citing any legal authority, Ms. Coleman also argues that, "[i]f the ALJ truly believed there was some

---

[16]The undersigned has rendered a comparable decision from which the framework, analysis, and disposition of this issue, in part, persuasively flows. *See Pierson v. Colvin*, No. 4:12-CV-2095-VEH, (Doc. 13 at 16-17) (N.D. Ala. Mar. 3, 2014).

[17]SSR 96–5p states that: "[f]or treating sources, the rules also require that [the ALJ] make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to [him]."

[18]Ms. Coleman's brief states that, "even if the ALJ finds Dr. Davis'[s] opinion inconsistent, he is not free to dismiss this opinion out of hand." (Doc. 10 at 10). She asserts that it is an "egregious error" for the ALJ "to dismiss this opinion because the ALJ believes it to be inconsistent without first contacting Dr. Davis." *Id.*

inconsistency in Dr. Harris'[s] opinion, it was incumbent upon the ALJ to recontact Dr. Harris for clarification." (Doc. 10 at 12).

Under Social Security Regulations, the ALJ makes a disability determination based on what the record shows, and will consider the consistency and sufficiency of the evidence in doing so. If evidence is inconsistent, the ALJ will "weigh the relevant evidence" to reach a disability decision using the information contained in the record. 20 C.F.R. § 404.1520b(b). If the evidence in the record is insufficient, or after weighing inconsistent evidence the ALJ "determine[s] [h]e cannot reach a conclusion about whether [the claimant is] disabled," the ALJ may recontact a physician for additional information. 20 C.F.R. § 404.1520b(c).

In the Eleventh Circuit, a court determining whether a duty to recontact a medical source arises is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). "The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'" *Couch*, 267 F. App'x at 855 (quoting *Brown,* 44 F.3d at 936 n.9).

The record reflects that the duty to recontact did not arise here. While the record may contain some inconsistent information, in particular between the opinions

provided by Drs. Davis and Harris, and within Dr. Harris's report and clinical notes, the record does not indicate that the medical sources were in control of additional records that would clarify any inconsistencies. Overall, the record contained substantial evidence supporting the ALJ's disability determination.[19]

It appears that the ALJ was in possession of all of Dr. Davis's medical records, and the information contained therein was adequate to enable the ALJ to determine that Ms. Coleman was not disabled. Any inconsistencies the ALJ would have found in the evidence from Dr. Davis would have been cured by the ALJ's adoption of Dr. Davis's conclusions regarding Ms. Coleman's functional capacity. The ALJ did not simply "dismiss this opinion," but factored in any of Dr. Davis's determinations pertaining to Ms. Coleman's physical abilities and pain through his acceptance of Dr. Davis's recommendations for Ms. Coleman's work restrictions. Therefore, there was no need for additional information or clarification from Dr. Davis.

Furthermore, the ALJ applied the proper weight to Dr. Harris's medical opinion, and made his disability determination accordingly. As explained above, the ALJ adopted Dr. Davis's opinion, and Dr. Harris's statements actually partially corroborated this opinion. Dr. Harris indicated Ms. Coleman could perform light to sedentary work activity, while Dr. Davis indicated she could perform light work

---

[19] *See* discussion above regarding the ALJ's evaluation of Drs. Davis's and Harris's opinions.

activity. The ALJ applied the appropriate relative weight between these two physicians, given that Dr. Davis was Ms. Coleman's treating physician and Dr. Harris was simply a consulting physician. Additionally, the record contained Dr. Harris's clinical notes. These notes provided the necessary information for the ALJ to find that Ms. Coleman could perform light work activity, the less restrictive level of work activity Dr. Harris stated Ms. Coleman could perform.

After properly weighing the relevant evidence from Ms. Coleman's medical sources, the ALJ found that he could make a disability determination despite these inconsistencies. Therefore, remand for further development of the record is not necessary. The record contains sufficient evidence for the ALJ to make an informed determination as to whether Ms. Coleman is disabled.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the decision will be affirmed by separated order.

**DONE** and **ORDERED** this 12th day of November, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

23